IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

GARY SIPPLE BEY,

Plaintiff,

v. Case No. 26-4022-JWB

CITY OF EMPORIA, KANSAS, et al.,

Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motions to dismiss (Docs. 37, 40); Plaintiff's motions to file a surreply (Doc. 56); and Plaintiff's motions for temporary restraining order ("TRO") and preliminary injunction (Docs. 10, 58). The motions are fully briefed and ripe for decision. (Docs. 38, 41, 45, 49, 52, 55, 59.) For the reasons stated herein, Defendants' motions to dismiss (Docs. 37, 40) are GRANTED; Plaintiff's motions to file a surreply (Doc. 56) is DENIED; and Plaintiff's motion for TRO and preliminary injunction (Docs. 10, 58) are DENIED AS MOOT.

**I. Facts**

The following factual allegations are taken from the second amended complaint. (Doc. 33.) Before proceeding, however, both parties have attached numerous exhibits to their filings. (Docs. 33-1–33-6; 38-1–38-3). Ordinarily, if matters outside the pleadings are not excluded by the court on a Rule 12(b)(6) motion, it will "be treated as one for summary judgment." Fed. R. Civ. P. 12(d). The court may, however, consider materials beyond the complaint without converting the motion if they are (1) referenced in the complaint, (2) central to the plaintiff's claim, and (3) of undisputed authenticity. *Davis v. BAE Sys. Tech. Sols. & Servs., Inc.*, 764 F. App'x 741,

742 n.1 (10th Cir. 2019); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). "[C]ourts have broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). Here, the majority of the parties' exhibits are unnecessary to the resolution of the pending motions. Thus, the court excludes those materials from its consideration and declines to convert the motions. To the extent an exhibit attached to the complaint is relevant and satisfies the above standard, the court will exercise its discretion in considering it and will expressly so state. Now to Plaintiff's allegations.

Gary Sipple Bey ("Plaintiff") brings this action against the City of Emporia, Kansas ("the City"); Trey Cocking, the city manager; Ed Owens, the chief of police; Emporia police officers Brown and Austin; K&S Towing ("K&S"); James Thomas, the owner of K&S; Judge Ted Hollembeak, a municipal court judge for the City; and John Doe Officers 1–5. (Doc. 33 ¶¶ 12–29.) Each individual Defendant appears to have been sued in his official and individual capacities.

On November 22, 2025, Officers Brown and Austin stopped and detained Plaintiff. Plaintiff fails to provide a reason for the stop, only that it was "unlawful." (*Id.* ¶ 43.) Plaintiff was taken to jail, fingerprinted, photographed, and his "currency" was "converted into a commercial card system." (*Id.* ¶¶ 50–51.) In connection with the arrest, a 2007 Chevy Express—which Plaintiff says is trust property held in the "Sipps Tribe Trust"—was towed and held by K&S. (*Id.* ¶ 46.) K&S issued a notice to sell the vehicle while the underlying charges were pending. Plaintiff alleges that this amounted to an unconstitutional seizure and that K&S's threatened sale of the vehicle deprived him of due process and "trust-property interests." (*Id.* ¶ 49.) Plaintiff claims that this encounter caused him injury with damages amounting to $10,000.00 per day since the arrest.

On April 16, 2026, Plaintiff was again arrested in Emporia and charged with driving without a license and with an expired tag. Plaintiff alleges the citation identified him by the wrong

name and wrong address which he believes rendered the instrument defective. In any event, the April 16 citation was dismissed without prejudice and was refiled and is currently being litigated in the Lyon County District Court in Kansas. *See State of Kansas vs. Gary Sipple Bey*, Case No. LY-2026-TR-000722 (2026).[1] Plaintiff also alleges that prior to this arrest, he placed the Kansas Department of Motor Vehicles on notice that he was "rescinding [his] DMV-related contracts, licenses, identification cards, vehicle registrations, signatures, source information, and related records." (*Id.* ¶¶ 66.) In Plaintiff's view, because of this purported rescission, Defendants had no lawful basis to presume his consent to the state's licensing and registration system, and that presuming such consent amounted to harassment.

Following his release from jail later on April 16, Plaintiff stood outside the Emporia Police Department for approximately five minutes, sorting his personal belongings. (*Id.* ¶¶ 74–75.) At that time, four officers approached Plaintiff and asked him to produce jail release papers. Plaintiff alleges that this encounter caused him to feel intimidated and harassed because the officers were "standing in a threatening manner," and therefore he believes it amounted to an "unconstitutional seizure." (*Id.* ¶¶ 77, 83–91, 101–02.) Plaintiff claims this harassment continued the following day, April 17, because an officer followed the vehicle driven by Plaintiff's son on the highway for a couple of minutes. Plaintiff claims this activity caused injury and demands $10,000,000.00.

Finally, during the municipal proceedings that transpired in connection with the citations Plaintiff incurred, he disputes the authority of the presiding judge—Judge Ted Hollembeak—to act in a judicial role. (*Id.* ¶ 70, 147.) He alleges that public attorney-registration records list

[1] The court takes judicial notice of the state court filings in Plaintiff's case as they are documents in the public record. *See Stan Lee Media, Inc. v. Walt Disney Co.*, 774 F.3d 1292, 1298 n.2 (10th Cir. 2014). Accordingly, the court may review those filings in assessing the motion to dismiss. *Eckert v. Dougherty*, 658 F. App'x 401, 404, 411 n.1 (10th Cir. 2016).

Hollembeak as "Disbarred" and therefore Hollembeak could not exercise judicial power. (*Id.* ¶¶ 71.) Plaintiff therefore demands proof of Hollembeak's oath, appointment, and authority to act.

The complaint asserts ten counts: unlawful seizure and detention under § 1983 and the Fourth Amendment ("Count I"); deprivation of liberty and property without due process under § 1983 and the Fifth and Fourteenth Amendments ("Count II"); violation of the right to travel ("Count III"); violation of religious freedom under the First Amendment ("Count IV"); unlawful detainment ("Count V"); unauthorized judicial action under § 1983 ("Count VI"); retaliatory harassment under § 1983 ("Count VII"); municipal liability under § 1983 ("Count VIII"); unlawful towing and threatened sale of trust property ("Count IX"); and forced biometric capture and conversion of funds ("Count X"). It appears each count is asserted against all Defendants except for Count VI, which is directed at Judge Hollembeak, and Count IX, which is directed at K&S and Thomas. In addition to damages totaling $20,000,000.00, Plaintiff seeks a TRO and preliminary injunction restraining Defendants from "unlawfully stopping, detaining, threatening, following, surveilling, or otherwise targeting [Plaintiff] and his family." (*Id.* ¶¶ 6, 182–195.)

## II. Standard

To withstand a motion to dismiss under Rule 12(b)(6), the complaint must contain enough allegations of fact to state a claim for relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, the court accepts all well-pleaded allegations in the complaint as true and construes them in the light most favorable to the plaintiff. *Albers v. Bd. Of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 700 (10th Cir. 2014). Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Because Plaintiff proceeds pro se, the court is to liberally construe his

filings. *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008). However, liberally construing filings does not mean adding factual allegations or constructing a legal theory on his behalf. *Id*.

## III. Analysis

Defendants' motions are divided by named parties. (Docs. 38, 41). The court takes the same approach and addresses each Defendant, or group of Defendants, in turn. Before doing so, a word on Plaintiff's response and motion to file a surreply is appropriate. The principal theme of Plaintiff's response and the justification for which he believes a surreply ought to be allowed is that Defendants' motions to dismiss rest on "unsworn factual narrative[s]." (Docs. 56 at 1; 52 at 2.) In Plaintiff's mind, this means that any factual assertions made in Defendants' motions to dismiss are inadmissible and thus the court must allow the parties to proceed with discovery. That argument is unpersuasive. In a Rule 12(b)(6) motion, the court does not credit Defendants' version of events; rather, it accepts the complaint's well-pleaded allegations as true and asks whether they state a claim. Accordingly, Plaintiff fails to show good cause justifying the filing of his surreply. *James v. Boyd Gaming Corp.*, No. 19-2260-DDC-JPO, 2021 WL 794899, at *5 (D. Kan. Mar. 2, 2021) (Surreplies "are permitted only . . . under 'rare circumstances' after good cause is shown.").

But Plaintiff does try to shore up his complaint with new allegations offered for the first time in his responses. (Docs. 45, 52.) That is improper. The court may not consider them because a complaint's sufficiency is measured by its contents, not by supplements in briefing. *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint"). Now to Plaintiff's claims.

### A. Claims Brought on Behalf of Others

A federal litigant has the right to represent himself. 28 U.S.C. § 1654. But that right extends only to one's own case; a pro se party who is not an attorney may not represent another

person or artificial entity. *United States v. Lain*, 773 F. App'x 476, 477 (10th Cir. 2019); *Draughon v. United States*, 103 F. Supp. 3d 1266, 1284 (D. Kan. 2015). Many of Plaintiff's allegations run afoul of this rule. Plaintiff's property claims center on a vehicle that Plaintiff says is "trust property secured under the Sipps Tribe Trust," for which Plaintiff is the trustee. (Doc. 33 ¶¶ 46, 170.) Other allegations seek relief on behalf of Plaintiff's son and his son's girlfriend. (*Id.* ¶¶ 91, 183, 186.) Plaintiff is not an attorney and cannot represent another person or entity. *See Conagra Foods v. Americold Logistics*, 776 F.3d 1175, 1176 (10th Cir. 2015) ("Trusts are artificial entities that exist independently of their trustee"). Further, this court has already informed Plaintiff that claims belonging to a trust must be brought through counsel. (Doc. 4.) Thus, to the extent Plaintiff asserts claims on behalf of the Sipps Tribe Trust, the "Sipps Tribe," Plaintiff's son, his son's girlfriend, or anyone other than Plaintiff himself, the court grants the motion to dismiss those claims. *Zanecki v. Health All. Plan of Detroit*, 576 F. App'x 594, 595 (6th Cir. 2014) ("The rule against non-lawyer representation protects the rights of those before the court by preventing an ill-equipped layperson from squandering the rights of the party he purports to represent.") (internal quotations omitted). Accordingly, the following analysis addresses the claims Plaintiff brings on his own behalf.

**B. Judge Theodore Hollembeak**

Count VI is a claim against Judge Hollembeak arising solely from his adjudication of the municipal charges against Plaintiff. (Doc. 33 ¶¶ 70, 72, 147.) Defendants move for dismissal on the grounds of judicial immunity. (Doc. 38 at 8–10.) Judges are absolutely immune from suit for acts performed in their judicial capacity. *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam) ("[J]udicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery"). Such immunity is only overcome in two circumstances, and neither is alleged here. *Id.* Presiding over municipal proceedings,

adjudicating charges, and entering orders are quintessential judicial functions—indeed, they are the only allegations Plaintiff attributes to Judge Hollembeak—and the Emporia Municipal Court plainly had jurisdiction over municipal charges against Plaintiff arising within the city. *Stump v. Sparkman*, 435 U.S. 349, 362 (1978) (holding an act is judicial if "it is a function normally performed by a judge."). In his response, Plaintiff invokes *Forrester v. White*, 484 U.S. 219, 227–29 (1988), for the proposition that administrative acts enjoy no immunity. While that is true, it is irrelevant. Plaintiff's complaint does not challenge administrative acts such as hiring, firing, or courthouse management. Plaintiff only challenges the adjudication of his municipal charges which, as previously discussed, are clearly judicial functions. Accordingly, Plaintiff's claims against Judge Hollembeak are dismissed on the grounds of judicial immunity.

Plaintiff's allegations also focus on an attorney-registration search he claims to have conducted that lists Judge Hollembeak as "Disbarred." (Doc. 33, ¶¶ 72, 145–49.) Based on that, Plaintiff argues that the judge lacked authority to act. This argument lacks merit. Judge Hollembeak's status as a licensed attorney in the state of Kansas is a matter of public record and, as Defendants urge, this court can and does take judicial notice thereof.[2] *See Grynberg v. Koch Gateway Pipeline Co.*, 390 F.3d 1276, 1278 n.1 (10th Cir. 2004); *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) ("[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment" (citation omitted)). Finally, Plaintiff's demand that Judge Hollembeak produce his oath, bond, appointment, and judicial authority is not a cognizable cause of action and is dismissed. All claims against Judge Hollembeak are dismissed.

**C. Officers Brown, Austin, and John Doe Officers 1–5**

[2] Judge Theodore Hollembeak, whose Kansas bar number is: 08241, is a licensed attorney in the state of Kansas, which can be verified through public record at: https://directory-kard.kscourts.gov/

Officers Brown and Austin invoke qualified immunity (Doc. 38 at 10–18). "[Q]ualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Valverde by and through Padilla v. Dodge*, 967 F.3d 1049, 1058 (10th Cir. 2020) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). Qualified immunity is designed to protect "all but the plainly incompetent or those who knowingly violate the law." *Soza v. Demsich*, 13 F.4th 1094, 1099 (10th Cir. 2021). And "district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). To overcome a qualified immunity defense, Plaintiff bears the burden to demonstrate on the facts alleged: "(1) that the official violated a statutory or constitutional right; and (2) that the right was 'clearly established' at the time of the challenged conduct." *Quinn v. Young*, 780 F.3d 998, 1004 (10th Cir. 2015). This is a "heavy, two-part burden," and failure on either prong requires immunity. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Plaintiff cannot carry his burden as to either arrest.

Start with the November 22 arrest. Plaintiff claims that when Officers Brown and Austin stopped him, the stop violated due process because he "was taken to jail without immediate access to a magistrate," "was fingerprinted and photographed before lawful conviction," and was "forced [into] biometric capture and conversion of funds." (Doc. 33 ¶¶ 42–43.) That is all the allegations. Plaintiff pleads no facts about what happened, why the officers acted, or what made their conduct unreasonable. His conclusory assertion of unlawfulness has no bearing on the court's analysis. *Shero*, 510 F.3d at 1200. Plaintiff's response identifies no precedent beyond general constitutional principles. A plaintiff who pleads nothing but his own conclusion has not plausibly alleged a constitutional violation, much less the violation of clearly established law. *See Robbins*, 519 F.3d

at 1247. Officers Brown and Austin are immune for their conduct involving the November 22 arrest, and Plaintiff's claims premised on their actions are dismissed.

The April 16 arrest fares no better. As an initial matter, Plaintiff has not served any officer in connection with this arrest and has only identified in passing five John Doe Officers. (Doc. 33 ¶¶ 29, 166.) Because none of these unnamed officers have appeared or joined either motion to dismiss, the court acts on its own initiative as to them. *McKinney v. Oklahoma*, 925 F.2d 363, 365 (10th Cir. 1991) (holding that district courts may dismiss claims sua sponte under Rule 12(b)(6) where it is patently obvious that the plaintiff cannot prevail on the facts alleged). Plaintiff claims he was arrested for driving without a driver's license and with an expired tag and—far from denying this conduct—affirmatively alleges that he "rescinded" his DMV-issued licenses and registrations a year earlier. (Doc. 33 ¶¶ 58, 66.) In other words, Plaintiff does not claim he had a valid license; his theory is that Kansas's licensing requirements ceased to apply to him once he mailed the Department of Motor Vehicles a notice revoking his participation. A motorist cannot simply opt out of the state's traffic code by sending the DMV a letter. Driving without a valid license and without a valid registration are both misdemeanors in Kansas. *See* K.S.A. §§ 8-235(a), (e) (driving without "a valid driver's license" is a misdemeanor); K.S.A. § 8-142 (operating a vehicle without valid registration is a misdemeanor). And an officer who observes a misdemeanor such as those has probable cause to stop the vehicle and arrest the occupant. K.S.A. § 22-2401(d); *see also Webb v. Scott*, 643 F. App'x 711, 715 (10th Cir. 2016); *Sigg v. Allen Cnty.*, 712 F. App'x 738, 741 (10th Cir. 2017). Plaintiff's own allegations admit the violation and, with it, the probable cause justifying the stop. Therefore, under the facts pled, any warrantless Fourth Amendment inquiry ends with probable cause. An officer with probable cause may make a custodial arrest even for a minor offense. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Plaintiff has

again failed to allege a constitutional violation or the violation of clearly established law. Accordingly, any John Doe Officers are immune for their conduct involving the April 16 arrest, and Plaintiff's claims premised on that arrest are dismissed.

As best the court can tell, Plaintiff also brings claims against the five John Doe Officers based on a post-release encounter from April 16 and an unrelated incident on April 17. (Doc. 33 ¶¶ 23–29, 74–94.) Here, Plaintiff describes an encounter where an officer asks him why he was standing outside the jail moments after his release and requesting his release papers. (*Id.* ¶¶ 74–91.) He makes no allegation of an arrest, citation, search, and no command to stay. This episode does not amount to a constitutional violation. Officers do not seize a person merely by approaching him in a public place and asking questions. *Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place…"). Even assuming a show of authority ripened into a brief detention, Plaintiff identifies no law, and certainly none clearly established, holding that officers violate the Fourth Amendment by briefly confirming the release status of a man standing outside the jail immediately after being released from it.

As for April 17, Plaintiff alleges an officer followed his son's vehicle on a public highway. (Doc. 33 ¶¶ 93–94.) As discussed above, this claim is barred because Plaintiff is not an attorney. In any event, driving behind another car on a public highway does not amount to a restraint of anyone's liberty. *United States v. Knotts*, 460 U.S. 276, 281–82 (1983) ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements."). In sum, all claims against the John Doe Officers are dismissed.

Plaintiff's allegations are erratic, at best. Thus, the remaining theories and arguments arising from the arrests is the court's best attempt at characterizing Plaintiff's shotgun approach.

First, Count III's "right to travel" claim lacks merit. The United States Constitution protects the freedom to travel among the states; it does not confer a right to operate a motor vehicle on public roads free of licensing, registration, and insurance requirements. *See Reitz v. Mealey*, 314 U.S. 33, 35 (1941) ("The use of the public highways by motor vehicles, with the consequent dangers, renders the reasonableness and necessity of regulation apparent. The universal practice is to register ownership of automobiles and to license their drivers."), *overruled in part on other grounds by Perez v. Campbell*, 402 U.S. 637, 652–54 (1971); *Roberts v. State*, 229 F.3d 1164, 1165 (10th Cir. 2000) ("There is no fundamental right to drive a motor vehicle."). Plaintiff remains free to travel wherever he likes and by any mode for which he is properly licensed; otherwise, his right to travel claim as framed is dismissed.

To the extent Counts II and V rest on the allegation that Plaintiff was jailed "without immediate access to a magistrate" (Doc. 33 ¶ 44), the Constitution does not require immediate access; a judicial probable-cause determination within 48 hours of arrest generally satisfies the Fourth Amendment. *Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991). The complaint alleges nothing about how long Plaintiff was held; therefore, it fails to state a claim. As part of Counts I, II, and VII, Plaintiff alleges that the citation he was issued in conjunction with the April 16 arrest had the wrong name and wrong address which he claims amounted to a violation of § 1983. However, Plaintiff goes on to allege that the associated case was dismissed. (*Id.* ¶¶ 62–64.) To the extent that a clerical error in a charging instrument amounts to a § 1983 violation—a proposition for which the court is skeptical, to say the least—the claim is moot because on Plaintiff's own admission the underlying case was dismissed.

Count X complains that Plaintiff was fingerprinted and photographed "before lawful conviction" and that his cash was converted into a commercial card system while he was processed

into jail. (*Id.* ¶¶ 50–52.) Fingerprinting and photographing are routine administrative steps incident to arrest. It has been "elementary" for the better part of a century that a person in lawful custody may be required to submit to both. *Maryland v. King*, 569 U.S. 435, 459 (2013) (quotation omitted). As for the card system, Plaintiff identifies no authority holding that a jail's handling of an arrestee's funds in electronic rather than paper form violates the Constitution.

The impoundment of the 2007 Chevy Express also did not violate Plaintiff's rights (Counts II and IV). As discussed, Plaintiff has no property interest to assert because he admits the vehicle belongs to the "Sipps Tribe Trust," not to him. (Doc. 33 ¶¶ 46, 170.) In any event, officers in Kansas may take custody of a vehicle when its driver is arrested. *South Dakota v. Opperman*, 428 U.S. 364, 368–69 (1976); K.S.A. § 8-1570(c)(2). Further, as Defendants properly point out, impounding the unregistered vehicle of an unlicensed, arrested driver violates no constitutional right. *Hackett v. Artesia Police Dep't*, 379 F. App'x 789, 793–94 (10th Cir. 2010). Accordingly, to the extent Plaintiff brings claims on his own behalf regarding the impoundment of his 2007 Chevy Express, they are dismissed for failure to state a claim.

Plaintiff's First Amendment claim (Count IV) rests on entirely conclusory allegations and unspecified "protected duties." (Doc. 33 ¶¶ 53, 134–35.) He pleads no facts identifying a religious exercise, explaining how it was burdened, or suggesting that the officers acted for anything other than for neutral, generally applicable law enforcement purposes. Plaintiff's argument that enforcing the traffic code against an unlicensed driver is religious discrimination because the driver's vehicle serves a religious ministry is frivolous. (Doc. 52 at 11–12.) Plaintiff fails to point to precedent, and the court is aware of none, allowing individuals to violate traffic laws merely because their vehicle serves a religious ministry. That claim is dismissed.[3]

---

[3] Throughout Plaintiff's response, he makes many passing comments about wanting his impounded vehicle back. Defendants' reply identifies the statutory avenue for recovering a towed vehicle. (Doc. 55 at 6 (citing K.S.A. § 22-

Finally, to the extent Count VII targets the arrests as "retaliatory," the existence of probable cause—supplied, again, by Plaintiff's own allegations—defeats a retaliatory-arrest claim. *Nieves v. Bartlett*, 587 U.S. 391, 402 (2019) ("The plaintiff pressing a retaliatory arrest claim must plead and prove the absence of probable cause for the arrest."). In short, Plaintiff has not plausibly alleged that Officers Brown, Austin or any unnamed officer involved in the arrests violated a clearly established constitutional right. Accordingly, they are entitled to qualified immunity and the claims against them are dismissed.[4]

**E. City Manager Trey Cocking and Chief of Police Ed Owens**

Plaintiff's claims against Cocking and Owens fail because the complaint says nothing about them. Apart from the caption and a single paragraph reciting that they are the City's "policymakers," neither man is alleged to have done anything—even so much as known about the events described. (Doc. 33 ¶¶ 14–15, 165–66.)[5] Liability under § 1983 is personal. Therefore "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what to whom*, to provide each individual with fair notice as to the basis of the claims against him." *Robbins*, 519 F.3d at 1247 (emphasis in original). Plaintiff's bare allegations fall well short of that standard. Further, Plaintiff's claims aimed generally at "Respondents" are not attributable to Cocking or Owens. Nor does § 1983 permit *respondeat superior* liability. *Ashcroft v. Iqbal*, 556

---

2512).) In any event, to the extent Plaintiff asserts a constitutional violation due to being deprived of his vehicle, there is no constitutional deprivation of property or taking under the Fifth or Fourteenth Amendments because Kansas law provides Plaintiff a remedy for recovering the vehicle. *See Schlobohm v. Hayden*, No. 22-3314-JWL, 2023 WL 1434296, at *7 (D. Kan. Feb. 1, 2023).

[4] Plaintiff, for the first time in his response, appears to bring another claim against the officers' involved in his arrests on the grounds that because he requested the officers' signed oaths of office under the Kansas Open Records Act and received only a blank form, that the court ought to presume they were acting without lawful authority. (Doc. 52 at 8.) Beyond the fact that it appears lawful for certain personnel records to be exempt from open-records disclosure (*see* K.S.A. § 45-221(a)(4)), Plaintiff has not asserted that claim because it is not in the complaint. *J.V. v. Albuquerque Pub. Schs.*, 813 F.3d 1289, 1299 (10th Cir. 2016) (holding claims are waived when "omit[ed] . . . from the[] complaint.").

[5] Plaintiff's response attempts to bring a supervisory liability claim that is absent from the complaint. (Doc. 52 at 9.) Again, Plaintiff has failed to properly assert that claim. *J.V.*, 813 F.3d at 1299.

U.S. 662, 676 (2009) ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Accordingly, the individual-capacity claims against Cocking and Owens are dismissed.

Plaintiff sued nearly every Defendant in both their individual and official capacities. Up until this point, the court has only addressed the individual-capacity claims. Their official-capacity counterparts, however, are simply claims against the City itself and therefore they rise or fall with Count VIII, to which the court now turns. *Kentucky v. Graham*, 473 US 159, 165–66 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."); *Couser v. Gay*, 959 F.3d 1018, 1031 (10th Cir. 2020).

**F. The City of Emporia and Official-Capacity Claims**

A municipality is not vicariously liable for the torts of its employees; it is liable under § 1983 only when execution of its policy or custom inflicts the injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 694 (1978). *Monell* overrode a prior holding of the Supreme Court that held § 1983 did not apply to suits against local governments. *Id.* at 663. "When execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [an] injury [ ] the government as an entity is responsible under § 1983." *Id.* at 695. There are five ways to plead a *Monell* § 1983 claim:

> (1) the municipality may be liable for a decision by its properly constituted legislative body;
> (2) an official policy exists when the municipal board or agency exercises authority delegated to it by a municipal legislative body;
> (3) actions by those with final decision-making authority for the municipality constitute official policy;
> (4) the municipality may be liable for a constitutional violation resulting from inadequate training when its failure to train the lawless employee reflects a deliberate indifference to the plaintiff's constitutionally-protected rights; or
> (5) the municipality's custom caused the constitutional violation.

*Darr v. Town of Telluride, Colorado*, 495 F.3d 1243, 1256–57 (10th Cir. 2007). Plaintiff identifies no policy or custom and therefore fails to plead a *Monell* claim. Rather, Plaintiff alleges that the City "maintained, ratified, tolerated, or failed to correct unconstitutional detention, intimidation, retaliatory pressure, defective process, misidentification, seizure, unlawful re-engagement of persons already released from custody, and renewed enforcement injury." (Doc. 33 ¶¶ 164–65.) The list is entirely conclusory and fails to provide information on what entity promulgated any policy, and if it did, when it did so, how it was enforced, or any other pertinent detail that would support a claim. Moreover, there is no underlying constitutional violation by any City officer, thus there is nothing for municipal liability to attach to in the first place. *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993). Count VIII and all claims against the City, including the official-capacity claims folded into it, are dismissed because Plaintiff failed to allege a violation and, even if he had, has failed to show that it was undertaken pursuant to a policy or custom.

**G. K&S Towing and Thomas**

The only remaining Defendants are the towing company and its owner, whose alleged role in this case begins and ends on November 22, 2025: K&S towed the vehicle at law enforcement's direction, held it, and sent a notice to Plaintiff that it might be sold. (Doc. 33 ¶¶ 46–48, 170–71.) Thomas's connection is that he owns K&S. (*Id.* ¶ 19.) Most of Plaintiff's claims contain no allegations against these Defendants at all and, to the extent they do, are dismissed as to K&S and Thomas for failure to provide sufficient notice, as already discussed. *See Robbins*, 519 F.3d at 1250. Further, based on Plaintiff's admission that the towed vehicle was trust property, he lacks authority to prosecute a claim on behalf of the trust and therefore his claims to the extent they are brought in that capacity are dismissed. *See Lain*, 773 F. App'x at 477. To the extent Plaintiff brings claims against K&S and Thomas in his individual capacity, the court will briefly address

the merits of the claims that implicate K&S and Thomas which, as best the court can tell, are Counts II, III, IV, and IX.

K&S and Thomas seek dismissal because Plaintiff has failed to state a claim against them. (Doc. 41 at 7–10.) The court agrees. Section 1983 reaches only those who act under color of state law. *Barnard v. Young*, 720 F.2d 1188, 1188–89 (10th Cir. 1983). K&S and Thomas are private parties, and the complaint's only effort to bring them within the statute is the conclusory allegation that they "acted jointly with, at the direction of, or in cooperation with government actors." (Doc. 33 ¶ 173.) But a private party does not become a state actor simply because its conduct was triggered by police action. *Dopp v. Loring*, 245 F. App'x 842, 846–47 (10th Cir. 2007). In *Dopp*, the Tenth Circuit rejected essentially the same argument Plaintiff makes here—that a towing company becomes a state actor merely because it towed a vehicle at police direction—reasoning that the company had not been directed or assisted by state officials in the specific act the plaintiff challenged, there the sale of the towed vehicle. *Id.* at 846–47. That reasoning applies here, because unlike the plaintiff in *Dopp*, Plaintiff does not allege that K&S sold, or attempted to sell, the vehicle at all; he alleges only that K&S sent the notice Kansas law requires before a lien sale may proceed. *See* K.S.A. § 8-1103(a). On the allegations, then, K&S and Thomas did nothing more than tow a vehicle at law enforcement's direction and send a statutorily required notice, which is precisely the conduct *Dopp* held insufficient to establish state action.

Further, the complaint fails to plead facts showing that K&S or Thomas's own conduct was itself unlawful. Plaintiff bears the burden of pleading facts establishing a constitutional violation; a defendant need not disprove a violation the plaintiff has not adequately alleged. *Crawford-El v. Britton*, 523 U.S. 574, 589 (1998). Because the complaint alleges nothing more than a lawful tow performed at police request and a notice K&S was statutorily obligated to send, it does not

plausibly allege that K&S or Thomas's conduct violated the United States Constitution, and dismissal is independently warranted on this ground. Accordingly, Plaintiff has failed to sufficiently plead state action by K&S and Thomas and the claims against them are dismissed.

**H. TRO and Preliminary Injunction**

That leaves Plaintiff's motions for a TRO and preliminary injunction. (Docs. 10, 58.) It requires little discussion because interim injunctive relief exists to preserve the parties' positions pending a decision on the merits, and is available only when a movant can show, among other things, a substantial likelihood of success on those merits. *First Baptist Church v. Kelly*, 455 F. Supp. 3d 1078, 1084 (D. Kan. 2020). Because Plaintiff's claims have been dismissed, there is no prospect of success. The dismissal of the underlying claims necessarily forecloses interim relief. *Fisher v. Okla. Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003). Accordingly, Plaintiff's motions for a TRO and preliminary injunction (Docs. 10, 58) are denied as moot.

## IV. Conclusion

For the foregoing reasons, Defendants' motions to dismiss (Docs. 37, 40) are GRANTED; Plaintiff's motions to file a surreply (Doc. 56) is DENIED; and Plaintiff's motion for TRO and preliminary injunction (Docs. 10, 58) are DENIED AS MOOT. This case is closed.[6]

IT IS SO ORDERED. Dated this 10th day of September, 2026.

s/ John W. Broomes
JOHN W. BROOMES
CHIEF UNITED STATES DISTRICT JUDGE

[6] Plaintiff argues that any dismissal should be without prejudice or that he should be "permitted to clarify" his claims. (Doc. 52 at 12.) The court construes his request as a motion to amend his complaint. Leave to amend need not be granted where amendment would be futile. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) ("[D]istrict court[s] may dismiss without granting leave to amend when it would be futile."). Here, the operative complaint is Plaintiff's third, and its defects are substantive rather than, as Plaintiff argues, clerical. No amount of clarification can rescue the defects emanating from Plaintiff's claims, making amendment futile. Accordingly, to the extent Plaintiff seeks leave to amend, it is denied.